IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-02178-RBJ

STEPHEN BRETT RYALS,

     Plaintiff,

v.

CITY OF ENGLEWOOD,

     Defendant.

---

## Order on Attorney's Fees and Costs

---

     Plaintiff moves for an award of attorney's fees and certain costs not previously assessed. The parties have submitted several affidavits in support of their respective positions and have not requested an evidentiary hearing or oral argument. For the reasons set forth herein, the Court awards attorney's fees in the amount of $429,999.50 and additional costs in the amount of $16,618.13.

## BACKGROUND

     The Court's findings and conclusions on the merits are set forth in detail in its order of August 21, 2013. Briefly, in 2001 the plaintiff, Stephen Ryals, was convicted of a sex offense. He served two years in prison and was ultimately discharged from parole in October 2004. Thereafter his only continuing obligation has been to register in his place of residence as a sex offender. He will be eligible to petition to discontinue his registration obligation in October 2014.

1

In 2012 Mr. Ryals and his wife purchased a house in Englewood, Colorado. In anticipation of his move into the new house he deregistered as a sex offender in Denver, where he had been living, and contacted the Englewood Police Department about registering there. However, he was informed that he could not live in Englewood because of his sex offense, and when he nevertheless registered in Englewood, he was cited for violating an Englewood ordinance governing sex-offender residency restrictions.

The ordinance, modeled after a similar ordinance in neighboring Greenwood Village, was enacted hurriedly in 2006 after the City Council learned that the Parole Board planned to place a "sexually violent predator" near a day care center in Englewood. It prohibits all felony and some misdemeanor sex offenders from living within 2000 feet of any school, park or playground or within 1000 feet of any licensed day care center, recreation center, public swimming pool, school bus stop, walk-to-school route, or recreational trail. The ordinance placed 99% of the City, and as a practical matter the entire City, off limits for Mr. Ryals (who was not a "sexually violent predator").

Because the ordinance prohibited him from living in his new home, Mr. Ryals filed a lawsuit against the City in state court seeking a judgment declaring that the ordinance was legally invalid and enjoining its enforcement against him. He based his case on several alternative legal theories: (1) that the ordinance was preempted by state law; (2) a § 1983 claim that the ordinance violated the United States Constitution as a prohibited ex post facto law; (3) a similar ex post facto violation of the Colorado constitution; (4) a § 1983 claim that the ordinance violated Mr. Ryals' right to substantive due process under the United States Constitution; and (5) a similar substantive due process violation under the Colorado Constitution.

The City removed the case to federal court, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331 as to claims based upon the United States Constitution and supplemental jurisdiction under 28 U.S.C. § 1367 as to the state law claims. The case was tried to the Court from July 22–25, 2013. The Court concluded that the regulation of sex offender residency in Colorado is a matter of mixed state and local concern; that the operational effect of the ordinance impermissibly conflicts with the state's interest in the uniform treatment, management, rehabilitation, and reintegration of sex offenders; and, therefore, that in its present form the ordinance is preempted by state law. Findings of Fact, Conclusions of Law and Order of Judgment [ECF No. 56] at 11–23. Because the Court entered judgment in the plaintiff's favor on the preemption claim, it did not reach the federal constitutional claims.

Plaintiff now seeks an award of attorney's fees in the amount of $475,403.50 and costs (in addition to $11,764.21 taxed by the Clerk's Office) of $16,618.13. The defendant responds that the plaintiff is not entitled to any award of attorney's fees, but if there is an award, then it should be substantially less than the amount requested.[1]

## FINDINGS AND CONCLUSIONS

## I.   ENTITLEMENT TO AN AWARD OF FEES.

Courts may award the prevailing party (other than the United States) reasonable attorney's fees in a successful § 1983 action to enforce a constitutional right. 42 U.S.C. § 1988(b). Mr. Ryals was the prevailing party. While he did bring two § 1983 claims, the Court decided the case on state preemption grounds and therefore did not reach or decide the constitutional issues. Nevertheless, a district court may award fees even though it declined to

---

[1] The parties disagree as to whether the Court should defer ruling on fees and costs until after the Tenth Circuit has addressed defendant's appeal on the merits. Recognizing that the work involved in preparing this order could be for naught, I prefer to address the issue now.

enter judgment on a substantial constitutional claim where the plaintiff prevailed on a pendent

state law claim that arose out of a common nucleus of operative fact.  *Plott v. Griffiths*, 938 F.2d

164, 167–68 (10th Cir. 1991) (citing *Maher v. Gagne*, 448 U.S. 122, 133 n.15 (1980)).

"A federal claim is insubstantial only if it is 'obviously without merit or is wholly

frivolous,' or 'is clearly foreclosed by prior decisions of the Supreme Court.'"  *Id.* at 167 (citing

138 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 3564, at 68–70

(2d ed. 1984)).  The test for "substantiality" is the same as the test for determining whether the

district court has pendent (supplemental) jurisdiction over the state law claim.  *Id.* at 168.

Here the answer to the substantiality question, as well as the "common nucleus" question,

was essentially provided by the defendant when it removed this case to this Court.  The Verified

Notice of Removal [ECF No. 1] noted that the case as filed in the state court asserted violations

of substantive due process under the Fourteenth Amendment and the ex post facto ban of Article

1, Section 10 of the United States Constitution.  Accordingly, it rested on federal question

jurisdiction under 28 U.S.C. § 1331.  *Id.* at 3.  As for the state law claims including the claim of

preemption under state law, the defendant stated: "These claims are so related to the federal

claims asserted by Plaintiff that they form part of the same case or controversy under Article III

of the United States Constitution.  Thus, this Court has supplemental jurisdiction under 28

U.S.C. § 1367 over the state claims asserted."  *Id.* (tracking the language of § 1367(a)).

In any event, the Court finds that the constitutional questions were substantial, and that

they did arise from a common nucleus of fact.  The core of the case was the allegation that the

City's ordinance unlawfully precluded Mr. Ryals, as a sex offender still under the state's

registration requirement, from living in his own home or virtually anywhere in the City of

Englewood.  The state preemption claim and the two federal constitutional claims were simply

alternative legal theories on which to challenge the same ordinance.

I also agree with the plaintiff that *Fross v. County of Allegheny*, 848 F. Supp. 2d 547

(W.D. Pa. 2012) is similar and persuasive.  There, sex offenders challenged a county ordinance

that prevented them from living within 2500 feet of any child care facility, community center,

public park, recreation facility, or school.  Plaintiffs asserted violations of various federal

constitutional rights pursuant to § 1983; a violation of the Fair Housing Act; preemption by state

law; and a violation of the local zoning code.  The court decided the case in plaintiffs' favor on

state law preemption grounds, over which it had supplemental jurisdiction pursuant to 28 U.S.C.

§ 1367(a).  Exercising judicial restraint, it did not decide the constitutional questions, but it found

that the constitutional claims were substantial: "Where a fee generating claim is sufficiently

meritorious to confer jurisdiction on the district court, and in turn to support the exercise of the

court's jurisdiction over related state law claims, the substantiality test has been met."  *Id.* at 552.

It also found that there was a "common nucleus of operative fact" because (1) the "facts related

to the passage, operation, enforcement, and effect of the Allegheny County Ordinance were

common to both the section 1983 claim and the state law claim that was ultimately decided;" and

(2) both the state preemption and constitutional theories "shared a determination that the County

Ordinance imposed restrictions and punishments on offenders who were otherwise eligible for

release under state law."  *Id.* at 553.  The same factors exist in the present case.

## II.  REASONABLE AMOUNT OF ATTORNEY'S FEES.

### A.  Lodestar Presumption.

"To determine the reasonableness of a fee request, a court must begin by calculating the

so-called 'lodestar amount of a fee, and a claimant is entitled to the presumption that this lodestar

amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.

1998). The "lodestar" is the product of reasonable **hours** times reasonable hourly **rates**. *Id.* If

the applicant "has carried the burden of showing that the claimed rate and number of hours are

reasonable, the resulting product is presumed to be the reasonable fee contemplated by § 1988."

*Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Plaintiff's proposed lodestar is summarized in the following chart:

| Time Keeper | Title | Graduation Year | Hours Expended | Hours Billed | Hourly Rate | Total |
|---|---|---|---|---|---|---|
| **FaegreBD** | | | | | | |
| Williams | Partner | 2000 | 267.4 | 237.1 | $435.00 | $103,138.50 |
| Sullivan | Counsel | 1999 | 342.1 | 298 | $395.00 | $117,710.00 |
| Doshi | Associate | 2006 | 419.2 | 292 | $350.00 | $102,200.00 |
| Myers | Associate | 2011 | 223.9 | 133.8 | $275.00 | $36,795.00 |
| Olsen | Associate | 2011 | 175.5 | 146.8 | $275.00 | $40,370.00 |
| LaTarte | Associate | 2008 | 29.2 | 27 | $310.00 | $8,370.00 |
| Coil | Paralegal | N/A | 186.1 | 99 | $200.00 | $19,800.00 |
| **ACLU Att'ys** | | | | | | |
| Silverstein | Legal Director | 1989 | 8.5 | 6.8 | $450.00 | $3,060.00 |
| Rich | Staff Attorney | 2005 | 270.1 | 125.6 | $350.00 | $43,960.00 |
| | | | **1922** | **1366.1** | | **$475,403.50** |

Motion [ECF No. 72] at 7.

**B. <u>Evidence Submitted by the Parties.</u>**

**1. <u>Plaintiff's evidence</u>.**

Plaintiff begins with the declaration of Daniel D. Williams, plaintiff's lead counsel.

Among other things Mr. Williams states that his law firm, Faegre Baker Daniels LLP, conducts

annual market surveys of hourly rates to be "comparable and competitive." [ECF No. 72-1 at

¶7]. He applied Faegre's 2013 rate schedule to all time recorded by the Faegre personnel. He

then reviewed Faegre's itemized billing records and wrote off 409.7 of the 1643.4 hours recorded

by the six Faegre lawyers and one paralegal included in the chart.  Together with write offs of

some of the time recorded by plaintiff's co-counsel from the American Civil Liberties Union,

plaintiff has written off 555.9 of the 1922 recorded hours listed in the chart, a reduction of

approximately 29%.  Mr. Williams also wrote off time recorded by several others whose names

are not listed in the chart.[2]  All told, plaintiff wrote off approximately 34% of the recorded time

(717.4 of 2,083.5 hours).  *See id.* at ¶ 9.

The two ACLU lawyers, Mark Silverstein and Sara Rich, each prepared a declaration

discussing their experience litigating civil rights issues.  [ECF Nos. 72-5 and 72-6].  Mr.

Silverstein, the Legal Director of the ACLU of Colorado, explains that he arrived at his rate of

$450 an hour for his time "after consultation with a number of attorneys who practice in the

Denver area and who are familiar with the market rates of attorneys of similar skill, experience,

and reputation."  He set the hourly rate for Ms. Rich's time ($350) based on her experience (nine

years doing plaintiffs' civil rights litigation).  [ECF No. 72-5 at ¶ 10].

In further support plaintiff presents the declaration of Lino Lipinsky de Orlov, a partner

in the Denver office of McKenna Long & Aldridge LLP.  Mr. Lipinsky, as he is commonly

known in this community, is a reputable lawyer who specializes in complex civil litigation.  He

is familiar with his firm's rates as a member of the firm's Board of Directors.  He also accessed

confidential market rate studies prepared for his law firm in 2012 and 2013 and a 2013 ALM

report on billing rates and practices.  Based on that information, and on his discussions with

attorneys at other firms, clients, and prospective clients, and on fee applications he has prepared,

he states that he is familiar with the prevailing market rates in the Denver metropolitan area in

---

[2] I identified two associates, one summer associate, two "researchers," two paralegals, one "paraprofessional," and one staff employee as having recorded time to the account that was entirely written off.  [ECF Nos. 72-2 through 72-4].

2013.  He has examined the experience and other credentials of Mr. Williams, Mr. Silverstein and Ms. Rich.  His opinion is that the rates charged in this case "fall well within the range charged by firms in cases such as [this case] and are reasonable for the Denver metropolitan legal market."  [ECF No. 72-7 at 10].  He did not review the hours recorded on a line by line basis, but he is satisfied from the review conducted by Mr. Williams that the number of hours being billed is reasonable.  *Id.* at 11.  Overall, his opinion is that the fees billed were reasonable.  *Id.* at 12.

Finally, the plaintiff presented the declaration of David A. Lane.  [ECF No. 72-8].  Mr. Lane is an experienced plaintiffs' civil rights attorney who enjoys a reputation in this community as an able and hard-nosed advocate on behalf of his (often unpopular) clients.  In his opinion the rates charged by the ACLU lawyers were "eminently reasonable," indeed low in Mr. Silverstein's case.  [ECF No. 72-8 at ¶¶ 14–16].  He did not express an opinion about the number of hours billed by the ACLU lawyers or about the billings of the Faegre lawyers.

> ### 2.  <u>Defendant's evidence</u>.

In opposition the City submits three affidavits: (1) Thomas Rice, lead defense counsel; (2) Cathy Havener Greer, an experienced attorney specializing in the defense of civil rights and employment litigation; and (3) Lisa Mancini Saunders, a Florida attorney with an insurance defense background who presently is the Director of Legal Operations for a national legal bill review company.

Mr. Rice is an experienced and able defense attorney who frequently appears in this Court on behalf of the City and County of Denver and other municipal clients.  He states that the work his firm did for the City in this case was billed at $200 per hour for himself; $185 per hour for partner Gillian Fahlsing; $165 per hour for associate Monica Kovaci; and $85 per hour for paralegal Sheileen O'Hayre.  Affidavit [ECF No. 78-1] at ¶ 4.  He states that these rates are what

his firm charges for any municipality that is a member of the Colorado Intergovernmental Risk Sharing Agency (a self-insurance risk pool). *Id.* at ¶ 5. He adds that, to his knowledge, these rates are consistent with rates charged by other attorneys and firms in the Denver legal community who handle civil rights litigation on an hourly basis. *Id.* at ¶ 6. He is critical of the number of attorneys and others on the plaintiff's team and singles out the number of hours counsel billed for plaintiff's response to defendant's summary judgment motion as "more than twice as much time as should have been reasonably incurred to complete briefing on these issues." *Id.* at ¶ 9. He does not, however, indicate the number of hours or the total amount of fees billed by his firm on the summary judgment issues or on this case as a whole.

Ms. Greer is a well-regarded defense attorney who has practiced with two reputable firms, Hall & Evans and Wells, Anderson & Rice. She has particular expertise in § 1983 litigation from a defense perspective. *See id.* at ¶ 5–6. Like Mr. Lipinsky on the plaintiff's side, she has served as an attorney's fee expert in other cases. In her opinion, the rates charged by the plaintiff here are "more consistent with those of practitioners of sophisticated commercial litigation than of private practice attorneys engaged in civil rights litigation of comparable experience to the attorneys for Plaintiff." *Id.* at ¶ 13. In reaching that opinion she has considered, in addition to her own experience, recent attorney's fee decisions of Judges Arguello, Brimmer and Martinez of this district as well as a 2008 Colorado Economics of Law Practice Survey which found that the average rate charged by lawyers who practiced in "Downtown Denver" that year was $268 per hour. Ms. Greer's opinion is that rates in the range of $275 to $300 per hour for partner-level attorneys, $230 an hour for associate attorneys, and $120 an hour for paralegals would be reasonable for the plaintiff's attorneys in this case. *Id.* at ¶ 19. She expresses no opinion on the number of hours billed.

Ms. Saunders has no opinion on hourly rates, but she has gone through the billing records on a line by line basis and has identified time entries that she believes should be reduced after applying several audit categories used by her company to audit legal bills.  [ECF No. 78-3 at ECF pages 9–34].  Two categories--duplicative time for review of documents by multiple timekeepers and communication among timekeepers--account for most of her recommended write-downs.  Because she did not attempt to adjust the hourly rates, the hours that she would eliminate account for $71,258 of the total of $475,403.50 billed ($61,088 Faegre, $1,350 Silverstein, $8,820 Rich).

**C. <u>Analysis</u>.**

The "lodestar" creates a rebuttable presumption of reasonableness.  In determining whether the presumption has been rebutted the Court must exercise discretion.  However, that discretion is narrow and must be exercised so as not to undermine the principles that gave rise to the Civil Rights Attorney's Fees Awards Act.  *Robinson*, 160 F.3d at 1278, 1280.

**1. <u>Hours</u>.**

To begin, I recognize that without the "brake" of having to bill a client, it is easy to record many hours.  But only those hours that were reasonably expended may be billed to one's adversary.  *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).  Here, on the plaintiff's side, 18 different individuals recorded time.  The billing documents contain numerous examples of between seven and 12-hour days recorded to this account.  Both Mr. Rice and Ms. Saunders have commented on what they believe to have been approximately 345 hours recorded just to the plaintiff's response to the City's summary judgment.  My own review added up to a little less, 332.7 hours, but either way it seems excessive at first blush.

But one must remember that the City very vigorously defended the ordinance and this case.  Defendant's summary judgment motion, for example, was 53 pages long and was supported by 14 exhibits (152 pages).  I characterized the motion as "excessive" in a minute order granting plaintiff an extension of time to respond to it.  [ECF No. 38].  A Tenth Circuit panel, affirming for the most part a fee award to plaintiffs' counsel in a civil rights case, cited the trial judge's finding that "in a typical civil rights case, where virtually all the evidence and witnesses were in the hands of the defendants and plaintiffs had the burden of proof, it could be expected that plaintiffs' lawyers must spend more time than defendants."  *Sussman v. Patterson*, 108 F.3d 1206, 1209 (10th Cir. 1997) (as paraphrased by the circuit).  That is substantially true of this case as well.

In *Sussman* the court also noted the trial court's findings that plaintiff's counsel had submitted meticulous, contemporaneous time records; that plaintiff's counsel had deleted approximately eight to ten percent of their time; that counsel by affidavit represented that the remaining hours were reasonable and necessary; and that the defendants had not submitted evidence challenging the reasonableness of the hours charged.  *Id.*  The comments concerning the plaintiff's evidence are equally true here.  Plaintiff's counsel maintained and submitted detailed contemporaneous time records.  Mr. Williams conducted a line by line review of all of the time recorded and wrote off approximately 29% of the time recorded by the nine timekeepers for whom time is being "billed" and all of the time recorded by nine other individuals.  The remaining hours, in his judgment, were necessarily and reasonably incurred.

Unlike the *Sussman* case, the City here did submit evidence challenging the hours charged, i.e., Ms. Saunders' report.  I have gone over her analysis line by line and find that I disagree with the majority of her recommendations for further reduction of the number of hours

billed.  My overall impression is that Mr. Williams did an excellent job of culling out arguably inefficient time, and that what remains is generally reasonable for a case of this size and complexity.  Although the remaining time does include some time for meetings or conferences among members of the "team," and reviews of certain documents by multiple individuals, that is not necessarily an indication of inefficiency.

Nevertheless, I have identified certain time entries as to which I agree with Ms. Saunders' judgment in whole or part.  In doing so I do not mean to indicate that the work was poorly done. I am satisfied from these lawyers' credentials and from the fact that Mr. Williams and Mr. Silverstein included them in the team that they do good work.  I find only that a small amount of the billed time, in addition to that which Mr. Williams already wrote off, can fairly be viewed as questionable enough to eliminate it from a final accounting of the hours that can be reasonably included in a bill to be paid by the defendant.  By timekeeper, I find that the following additional hours should be excluded:

> Olsen: reduce by an additional 5.6 hours.
> Sullivan: reduce by an additional 9.3 hours.
> Doshi: reduce by an additional 16.5 hours.
> Myers: reduce by an additional 15.1 hours.
> Rich: reduce by an additional 14.2 hours.

Accordingly, the Court finds that the following hours were necessarily and reasonably "billed" on this case through the end of the billing records submitted to date:

> Williams:      237.1 hours
> Sullivan:      288.7 hours
> Doshi:         275.5 hours
> Myers:         118.7 hours
> Olsen:         141.2 hours
> LaTarte:        27.0 hours
> Coil:           99.0 hours
> Silverstein:     6.8 hours
> Rich:          111.4 hours

2. __Hourly rates.__

Reasonable hourly rates in § 1988 cases are governed by "the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 895. A lawyer's regular rate is relevant but not conclusive. *Ramos*, 713 F.2d at 555. But Faegre's rates are said (by them and by Mr. Lipinsky) to be within the range of rates charged by large commercial law firms in the Denver metropolitan market in 2013.[3] Defendant agrees. [*See* ECF No. 78 at 14]. The rates for the ACLU lawyers were set by Mr. Silverstein after conferring with lawyers of similar experience in the community and are said (by Mr. Lane) to be "eminently reasonable" for such work.

Mr. Lipinsky has a commercial litigation practice, but according to his affidavit he has litigated cases involving constitutional issues including civil rights. [ECF No. 72-7 at 7–8]. Similarly Mr. Williams primarily has a commercial litigation practice, but he has participated in civil rights cases including another recent case with the ACLU. [ECF No. 72-1 at 3]. Nevertheless, it is fair to say that neither Mr. Lipinsky nor the Faegre lawyers consider themselves specialists in plaintiffs' civil rights work. But that largely misses the point. "The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Ramos*, 713 F.2d at 555. No one has suggested that the legal work required in this case was of a different level of complexity or difficulty to that of commercial litigation. The team included two experienced plaintiffs' civil rights specialists who presumably provided guidance as needed. Significantly, Mr. Williams recognized certain inefficiencies and wrote off a significant portion of the recorded time. On those facts this Court is not inclined to depart from

---

[3] The hourly rates used for this purpose, whether or not they are the lawyers' regular rates, "should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Ramos*, 713 F.2d at 555. The Court has received no indication that the rates charged by Faegre or the prevailing rates in the community have increased in 2014.

their regular rate structure without good reason.  I do find good reason as to some of the rates and will discuss that below.

The Court takes no issue with Mr. Lane's opinion concerning the rates charged by the ACLU lawyers.  "Salaried public interest firm lawyers should be assigned a billing rate equal to their counterparts in expertise in private practice."  *Id.*

Ms. Greer, similarly to the City's lawyers in this case, primarily specializes in what might broadly be called "insurance defense" litigation.  She is recognized in the community and by this Court as a very fine lawyer.  However, I am not persuaded by her opinions regarding the prevailing market rates applicable to the plaintiff's lawyers in this case.  For one thing, the market survey she cites is dated.  Also, Ms. Greer's suggested rates ($275–300 for partner-level work, $230 for associates, and $120 for paralegals) do not distinguish among different levels of experience within those categories, particularly "associates."  Most importantly, her suggested rates, like the rates Mr. Rice bills to municipal clients who belong to a common risk pool, come from the perspective of lawyers handling defendants' civil rights work.  But it does not follow that they should be applied here.  "Plaintiffs' and defendants' civil rights work . . . are markedly dissimilar."  *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).  The court explained:

> Attorneys in defendants' civil rights cases are typically paid regardless of their success in a case and receive payment on a shorter billing cycle.  Moreover, defendants' attorneys are sometimes guaranteed a certain amount of work from insurance pools.  As the district court pointed out, "defendants' attempt to impose the insurance pool rate on attorneys who perform plaintiff's civil rights work ignores these benefits – benefits which attorneys who perform plaintiff's civil rights work do not enjoy."

73 F.3d at 1019.

In fact, the rates Ms. Green suggests might be low even for insurance defense work.  For example, in *Nero v. American Family Mut. Ins. Co.*, No. 11CV2717-PAB-MTW, 2013 WL 5323191 (D. Colo. Sept. 23, 2013), Judge Brimmer considered a fee application filed on behalf

14

of the defendant insurance company after plaintiff's case (a putative class action asserting coverage and bad faith issues) was dismissed under Rule 12(b)(6).  Coincidentally the defendant's lawyers were from Faegre Baker Daniels.  The court approved Faegre's normal billing rates, i.e., $615–$630 for a senior partner with 35 years' experience; $395–$420 for Mr. Williams (the same Mr. Williams who headed up the present case for the plaintiff but based on his 2011–2012 regular rate); $370 for an associate with eight years' experience; $310 for an associate with five years' experience; and $240 for an associate with three years' experience.  *Id.* at *8–9.[4]

In *Brokers' Choice of America, Inc. v. NBC Universal*, No. 09CV717-CMA-BNB, 2011 WL 3568165 (D. Colo. Aug. 15, 2011), the defendant prevailed and requested fees under § 1988 and C.R.S. § 13-17-201.  The court (Judge Arguello) approved the requested rates of $425 for partners, $320 for an associate with six years of experience when work on the case began, $285 for an associate with two and one half years of experience when work on the case began, and $50 for a legal assistants.  *Id.* at *8.

The City calls my attention to various other cases decided by judges in this district, but I do not find them to be contrary to the plaintiff's position here.  In *Lucas v. Kmart Corp.*, No. 99CV1923-JLK-CBS, 2006 WL 2729260 (D. Colo. July 27, 2006), Judge Kane approved awards of $330 per hour and $275 per hour for plaintiffs' lawyers who secured a settlement of a nationwide class action under the Americans with Disabilities Act.  The plaintiffs' application for an award at those levels was based on what their lawyers believed (and the court agreed) were rates prevailing in Denver at that time.  Those rates were equal to or higher than the rates viewed as reasonable by Ms. Greer and Mr. Rice today, some eight years later.

---

[4] I obtained the experience levels of the lawyers from the court file of which I take judicial notice.

An even older case is *Milham v. Perez*, No. 03CV00702, 2005 WL 1925770 (D. Colo. Aug. 11, 2005).  The City points out that Judge Krieger approved $80 per hour for paralegal time in that civil rights case (which is what the plaintiff requested).  Not mentioned, however, is the court's finding that rates of $300 per hour for partners, $210 an hour for senior associates, and $150 per hour for other associates (as requested by the plaintiff) reflected prevailing rates in the Denver civil rights legal community at that time.  The lawyers' work in that case was performed in the years 2003 through 2005.  *Id.* at *6.

Back to more recent times, in *Trujillo v. Campbell*, No. 12CV228, 09CV3011-CMA-KLM, 2010 WL 1835245 (D. Colo. May 21, 2012), Magistrate Judge Mix found that $125 per hour was reasonable for paralegal time.  That is significantly lower than the rate Faegre has billed the principal paralegal who participated in the present case.  But the City does not mention that while Magistrate Judge Mix awarded attorney's fees for only part of the plaintiff lawyer's time, she found the rate of $400 per hour (as against defendant's proposed $180–$200) to be reasonable.  The award arose from a discovery dispute.

The City also cites *Nuanes v. NCC Business Services, Inc.*, No. 12CV0228-WJM-MJW, 2012 WL 5464598 (D. Colo. Nov. 9, 2012).  In that case Judge Martinez rejected a proposed rate of $300 per hour and instead found that $250 was reasonable for the work performed.  *Id.* at *1–2.  But that was not for civil rights or analogous work.  It was an application for a statutory fee award under the Fair Debt Collection Practices Act.  I too have used $250 an hour for that type of work, as have others of my colleagues.  Those cases, arising from a complaint that a collector has employed an abusive collection practice, are numerous, simple, routine and usually settled early for small amounts that often are less than the fee application.  They are in no way comparable to the work performed in the present case.

Ms. Greer cites another decision of Judge Martinez, *James v. Fenske*, No. 10CV2591-WJM-CBS, 2013 WL 656821 (D. Colo. Feb. 22, 2013). This was a multi-plaintiff collective action under the FLSA. The court indicated that, while it required more time and effort than a single plaintiff case, the wage and hour issues were not complex. *Id.* at *2. The prevailing plaintiff requested an attorney fee award based on hourly rates of $300–$350 for the two more senior lawyers, $280 for associates, and $120–$130 for paralegals. After reviewing competing affidavits (that were not further discussed in the order) the court found that "the hourly rates charged by Plaintiffs' counsel are somewhat high given each attorney's experience level and the customary rates in the Denver legal market for employment lawyers." *Id.* at *2. The court awarded fees at the rates of $275–$300 for the two more senior lawyers, $230 for associates, and $125 for paralegals. Those rates are in line with the rates Ms. Greer recommends. However, in my judgment, the case, though somewhat more difficult than a typical Fair Debt Collection Practices Act case, still is not comparable to the present case.

These cases essentially tell a story that we already knew. Rates are increasing. The market varies according to the type of case, the complexity of the case, and the experience level of the lawyers. Courts consider the reasonableness of a lawyer's hourly rates on a case by case basis. But none of the cases compels the conclusion that the prevailing market rates in this community for the type of plaintiffs' civil rights work involved here are significantly different than those which Mr. Ryals' lawyers are using.

This is not to say that I am not at all troubled by the rates charged in this case. I practiced law at a time when rates were substantially less. I fear that the legal profession's ever escalating rates have contributed to what has been called "the vanishing jury trial" and are putting high caliber legal representation out of reach for all but the rich and those who, like Mr. Ryals, are

fortunate enough to find lawyers willing to represent them on a contingency basis or in the hope of a fee award by a court.  Be that as it may, however, the present task is simply to determine whether the rates used by plaintiff's counsel are consistent with the prevailing market rates in the community.  With four exceptions, I find that they are.

The first exception applies to the rate applied to the time of associate attorney Tommy Olsen.  I am not in any way suggesting that he isn't a fine young lawyer.  He graduated cum laude from the Georgetown University Law Center in 2011.  Among other things he worked as a legal assistant at the U.S. Department of the Interior while in law school.  He wouldn't have been hired by Faegre Baker Daniels if he weren't well qualified.  But when he started working on this case (on July 9, 2012) he had been out of law school for one year.  His work on the case concluded (on March 1, 2013) before he was two years out of law school.  The billing records reflect that he was doing legal research, preparing drafts of pleadings, and doing other work of a kind that one would expect a beginning lawyer to do.  All of his time is billed at $275 an hour.  I remember that when I was fresh out of law school my time was billed at $25 an hour, and I was sure that I wasn't worth it.  That makes me an old fogie, I suppose, but I cannot find that it is reasonable to expect the City to pay $275 an hour for his time on this case.

Although not quite as clear, I also have trouble with $275 an hour for associate Shelby Myers.  She, too, appears to be a well-qualified young associate who graduated from the University of California, Berkeley School of Law in 2011 after serving as a Faegre summer associate in 2010.  But she was not yet two years out of law school when she begin work on this case (on March 3, 2013) and barely two years out when her work on the case concluded (last time entry June 3, 2013).

I further find that a small adjustment of the hourly rate of associate Hetal Doshi is appropriate to put her experience level (seven years) more in line with the rates billed for Ms. Sullivan ("Counsel" and one of the two primary trial lawyers with 14 years of experience) and Sara Rich (an ACLU staff attorney with eight years of experience in civil rights cases). Experience measured by years of practice is not the only indicator of value. The quality of one's work and its contribution to the result obtained obviously must be considered. *Ramos*, 713 F.2d at 555. I can find, and do find, that the quality of the work performed on behalf of Mr. Ryals by the team of lawyers from Faegre and the ACLU was excellent. But with respect to the junior lawyers, whose work mostly was performed behind the scenes, experience level is primarily what I have. On that basis I find that an adjustment of Ms. Doshi's rate is reasonable.

Finally, the time of paralegal Jill Coil was billed at $200 per hour. She is an experienced paralegal who joined Faegre in 2007. I have no doubt that her work was good, and that she contributed important value to the team effort. But that billing rate is significantly higher than the paralegal and legal assistant rates requested and approved in other cases in this district, and I have no good basis (other than that is what Faegre charges) to find that it was the prevailing rate for experienced paralegal work in the Denver metropolitan market in 2013.

Taking as a rough gauge Judge Brimmer's finding in *Nero* that $240 an hour was a reasonable rate for associates with three years of experience, I find that reasonable rates to charge the City for the time of Mr. Olsen and Ms. Myers are $210 and $225 respectively. I will adjust Ms. Doshi's rate downward by $10 to $340 per hour. I find that a reasonable rate to charge the City for Ms. Coil's time in this case is $125 per hour.

### 3.  __Conclusion regarding Attorney's Fees__.

Putting my findings regarding hours and rates together, I find and conclude that

the following attorney's fees (including paralegal fees) were necessarily incurred, reasonable in

amount, and consistent with the prevailing rates for similar services in the Denver metropolitan

legal market in 2013:

| | | | |
|---|---|---|---:|
| Williams: | 237.1 hours @ $435 | = | $103,138.50 |
| Sullivan: | 288.7 hours @ $395 | = | $114,036.50 |
| Doshi: | 275.5 hours @ $340 | = | $93,670.00 |
| Myers: | 118.7 hours @ $225 | = | $26,707.50 |
| Olsen: | 141.2 hours @ $210 | = | $29,652.00 |
| LaTarte: | 27.0 hours @ $310 | = | $8,370.00 |
| Coil: | 99.0 hours @ $125 | = | $12,375.00 |
| Silverstein: | 6.8 hours @ $450 | = | $3,060.00 |
| Rich: | 111.4 hours @ $350 …= | | $38,990.00 |
| **TOTAL:** | **1305. 4 hours** | | **$429,999.50** |

## III.   __COSTS__.

Plaintiff submitted a bill of costs totaling $32,855.50.  [ECF No. 63].  Costs were taxed

by the Clerk's Office in the amount of $11,764.21.  Plaintiff now seeks an additional award of

costs for Westlaw research ($15,391.66) and travel expenses associated with depositions of two

out of state expert witnesses, one called by each side at trial ($1,226.57), for a total of

$16,618.13.  Defendant has not objected.  Mr. Williams represents that Westlaw charges are

typically billed to Faegre's clients, and that reliance on Westlaw was necessary and efficient in

this case.  [ECF No. 72-1 at ¶ 22].  Absent any indication to the contrary, I find that this cost may

reasonably be awarded.  *See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1258 (10th

Cir. 1998).  Mr. Williams also represents that the travel costs were necessarily incurred (and that

plaintiff does not seek payment for travel time for the depositions).  [ECF No. 72-1 at ¶ 22].  I

find that this too is a reasonably charged cost.

**ORDER**

Plaintiff's Petition for Attorney Fees and Expenses is GRANTED.  The Court awards

attorney's fees in the amount of $429,999.50 and additional costs in the amount of $16,618.13.

An Amended Final Judgment will be entered accordingly.

DATED this 6th day of June, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge